Commonwealth of Massachusetts
BRISTOL SUPERIOR COURT
Case Summary
Civil Docket

05/04/2005
09:36 AM

## BRCV2005-00327
## Hodess Building Co., Inc. v United States Fidelity and Guaranty Company

| | | | |
|---|---|---|---|
| File Date | 03/31/2005 | Status | Disposed: transferred to other court (dtrans) |
| Status Date | 05/03/2005 | Session | C - CtRm Main - (Taunton) |
| Origin | 1 | Case Type | A01 - Services, labor, materials |
| Lead Case | | Track | F |

| | | | | | |
|---|---|---|---|---|---|
| Service | 06/29/2005 | Answer | 08/28/2005 | Rule12/19/20 | 08/28/2005 |
| Rule 15 | 08/28/2005 | Discovery | 01/25/2006 | Rule 56 | 02/24/2006 |
| Final PTC | 03/26/2006 | Disposition | 05/25/2006 | Jury Trial | No |

### PARTIES

**Plaintiff**
Hodess Building Co., Inc.
100 John L. Dietsch Square
Active 03/31/2005

**Private Counsel 545762**
Joseph J Reale Jr
30 Kennedy Plaza
Suite 400
Providence, RI 02903
Phone: 401-453-9900
Fax: 401-453-9917
Active 03/31/2005 Notify

**Defendant**
United States Fidelity and Guaranty Company
84 State Street
Boston, MA 02109
Served: 04/06/2005
Served (answr pending) 04/08/2005

A True Copy By Photostatic Process
Attest:

Asst Clerk of Courts

**Other interested party**
File Copy
Active 03/31/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 03/31/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 03/31/2005 | | Origin 1, Type A01, Track F. |
| 04/08/2005 | 2.0 | SERVICE RETURNED (summons): United States Fidelity and Guaranty Company, service made on April 06, 2005 (First Class Mail) |
| 05/03/2005 | 3.0 | Notice for Removal to the United States District Court filed by United States Fidelity and Guaranty Company |
| 05/03/2005 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

Commonwealth of Massachusetts
BRISTOL SUPERIOR COURT
Case Summary
Civil Docket

## BRCV2005-00327

## Hodess Building Co., Inc. v United States Fidelity and Guaranty Company

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 03/31/2005 | CtRm Main - (Taunton) | Status: by clerk<br>one trial review | Event held as scheduled |

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL COUNTY, ss                          FALL RIVER SUPERIOR COURT
                                            CIVIL DOCKET NO. C05-327

HODESS BUILDING CO., INC.            :
                                     :
            vs.                      :
                                     :
UNITED STATES FIDELITY AND           :
GUARANTY COMPANY                     :

BRISTOL, SS SUPERIOR COURT
FILED
MAR 3 1 2005
MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

### COMPLAINT

1.    Hodess Building Co., Inc. (Hodess) is a general contractor, with its principal place of business at 100 John L. Dietsch Square, North Attleboro, Massachusetts.

2.    United States Fidelity and Guaranty Company (Fidelity) is a bonding and surety company licensed to do business in the Commonwealth of Massachusetts.

3.    On or about September 30, 2002, Hodess entered into a contract with the Town of Concord, Massachusetts (Concord) for construction of a new elementary school known as Alcott Elementary School, Hodess Project No. 396 (the Project).

4.    Pursuant to terms and conditions of the prime contract, Hodess entered into numerous sub-contract agreements for variation trades for the completion of the work.

5.    In particular, Hodess entered into a contract with The Hartford Roofing Company (Hartford) for the construction and installation of the roof.

6.    Pursuant to the terms and conditions of the agreement between Hodess and Hartford, Hartford was required to provide a performance bond and a labor and material payment bond.

7.    A copy of the labor and material payment bond is attached as **Exhibit A** hereto.

8.    Under the terms and conditions of the bond, Hartford is the principal and Fidelity is the surety.

9.    The bond obligates the surety to complete the performance of work for Hartford if there is any default or failure to perform under the terms of the project.

10.    From the commencement of the work by Hartford, it did not perform in a satisfactory or workmanlike manner.

11.    Hartford consistently failure to deliver materials in a timely manner, staff the job with adequate workers to insure compliance with the schedule and failed to complete critical items of work associated with its obligation under the subcontract with Hodess.

12.    At all times, Hartford's work was critical to the completion of the job.  Both the prime contract and the subcontract clearly indicated that time was of the essence for the completion of the work.

13.    During the course of the Project, Hartford ceased doing business and was terminated from the project.

14.    As a result, Fidelity was notified pursuant to its obligation under the performance bond to complete the work under Hartford's subcontract.

15.    Fidelity and Hodess entered into an agreement, attached hereto as **Exhibit B**, whereby Fidelity agreed to perform the work of Hartford under the terms and conditions of the contract.

16.    The agreement also provided that the parties reserve any and all claims they had against each other as a result of Hartford's failure to complete the work.

17.    Ultimately, Fidelity, through a replacement subcontractor, which was hired by it, completed the Hartford work under the subcontract.

18.    The breach of contract by Hartford, however, caused significant and substantial consequential damages, which impacted Hodess' ability to complete the job in a timely manner. As a result, liquidated damages were assessed by Concord against Hodess for late delivery of the school.

19.    Additionally, Hodess sustained significant damages as a result of claims by subcontractors whose work was impacted by the roof not being completed in a timely manner.

20.    Additionally, Hodess expended significant additional general conditions to supervise and complete the work and managed the transition from Hartford to the replacement subcontractor hired by Fidelity.

21.    As a result of the action by Hartford, Hodess sustained significant damages and loss on the Project.

22.    Hodess made a prompt demand for payment of any consequential and direct damages as a result of Hartford's failure to perform against the performance bond issued by Fidelity on the Project.

23.    Fidelity has failed to respond or investigate the claim pursuant to its contractual and statutory obligation.


## COUNT I

### Breach of Contract

24.    Hodess hereby realleges the allegations set forth in Paragraphs 1 through 23, as if set forth in full herein.

25.    Hodess entered into a take over agreement with Fidelity for the completion of work by Hartford on the Project.

26.   Pursuant to the terms and conditions of the agreement, Fidelity was responsible to complete all of Hartford's work and the cost associated therewith.

27.   Fidelity has breached its agreement by failing to compensate Hodess for the cost incurred and the completion of Hartford's work.

**WHEREFORE**, Hodess Building Co., Inc. demands judgment against United States Fidelity and Guaranty Company, plus interest, costs and attorney's fees.

## COUNT II

## Performance Bond

28.   Hodess hereby realleges the allegations set forth in Paragraphs 1 through 23, as if set forth in full herein.

29.   Hartford entered into a subcontract with Hodess on the Project.

30.   Pursuant to its obligation, Hartford provided a performance bond with itself as principal and Fidelity as surety.

31.   Fidelity has breached the terms and conditions of its obligation under the performance bond by failure to perform all of the work and cost associated with the completion of Hartford's work on the Project.

**WHEREFORE**, Hodess Building Co., Inc. demands judgment against United States Fidelity and Guaranty Company, plus interest, costs and attorney's fees.

## COUNT III

32.   Hodess hereby realleges the allegations set forth in Paragraphs 1 through 23, as if set forth in full herein.

33.    Hodess was a third-party beneficiary of a contract of insurance issued by Fidelity and Hartford in the form of a performance bond.

34.    Pursuant to the obligations thereunder, Fidelity was obligated to perform the work of Hartford under the original contract and the cost associated therewith.

35.    As a result of Hartford's failure to perform, Hodess incurred costs which was an obligation of Fidelity.

36.    Hodess promptly presented a complaint for Fidelity for payment for costs associated with the completion of Hartford's work.

37.    Fidelity failed to properly investigate and meet its obligation pursuant to statute.

38.    Fidelity's action constitutes bad faith a violation of statutory obligation.

    **WHEREFORE**, Hodess Building Co., Inc. demands judgment against United States Fidelity and Guaranty Company, plus interest, costs and attorney's fees.

                                    Hodess Building Co., Inc.
                                    By its attorney,


                                    Joseph J. Reale, Jr. /#545762
                                    Joseph J. Reale, Jr. Ltd.
                                    30 Kennedy Plaza, Suite 400
                                    Providence, RI  02903
                                    Tel:    (401) 453-9900
                                    Fax:    (401) 453-9917

Dated: March **30**, 2005

RECEIVED

FEB 07 2003

HODESS BUILDING CO., INC.

**EXHIBIT A**

**SUBCONTRACT PERFORMANCE BOND**    **Bond No. SW5388**

KNOW ALL BY THESE PRESENTS, That we,    THE HARTFORD ROOFING COMPANY, INC.

_____53 Evans Drive, Stoughton, MA 02072_____
(Here insert the name and address, or legal title, of the Subcontractor)

As Principal, herein called Principal, and _United States Fidelity and Guaranty Company_____, a corporation
of the State of _____Maryland_____, as Surety, herein called Surety, are held and firmly
bound unto ___HODESS BUILDING COMPANY, 100 John J. Dietsch Square, P.O. Box 2720, North Attleboro MA 02763___

_____
(Here insert the name and address, or legal title, of the General Contractor )

as Obligee, in the amount of _Three Hundred Ninety Five Thousand Nine Hundred and 00/100 - - - - - - - - - - - - - - - - - - - - - - -
Dollars ($ _395,900.00_____ ), for the payment whereof Principal and Surety bind themselves, their heirs, executors,
administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated _October 8 2002_____ entered into a
subcontract with Obligee for ___Roofing and Sheet Metal - Alcott Elementary School, Concord MA _____

_____
which subcontract is by reference made a part hereof, and is referred to as subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if the Principal shall promptly and faithfully perform said
subcontract, then this obligation shall be null and void; otherwise to remain in full force and effect.

The Surety hereby waives notice of any modification or amendment to the Subcontract made in accordance with the terms thereof, and any
alteration or extension of time made by or through the General Contractor.

Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's
obligations thereunder:

(1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

(2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee, may arrange for the performance of Principal's
obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the
subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to
the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond. If the Surety
arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the
subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner
as said sums would have been payable to Principal had there been no default under the subcontract. The term "balance of the
subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the subcontract and
any amendments thereto, less the amounts heretofore properly paid by Obligee under the subcontract.

Any suit under this bond must be instituted before the expiration of two years from date on which final payment under the subcontract
falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the
heirs, executors, administrators or successors of the Obligee.

Signed and sealed this_____3rd_____ day of _____February_____, _2003_.

In the presence of:                                        THE HARTFORD ROOFING COMPANY, INC.    (Seal)
                                                                                                        Principal

_Donna M. Caputo_____        By _____
                                                                  Jeff Rollstein, Vice President/GM
_Monique Burns_____              United States Fidelity and Guaranty Company
                                                                                                        Surety

                                                              By _____
                                                                  Kathleen M. Flanagan        Attorney-in-Fact

S-1844/GEEF 10/99

# The St Paul

**POWER OF ATTORNEY**

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No. **23648**

Certificate No. **1614828**

**KNOW ALL MEN BY THESE PRESENTS:** That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin *(herein collectively called the "Companies")*, and that the Companies do hereby make, constitute and appoint

Kathleen M. Flanagan, Bette A. Sampsel, Richard A. Leveroni, Gary J. Giulietti, Kelly L. Juliano, Kathleen A. Wagner, and Stac Koehler

of the City of **Farmington**, State **Connecticut**, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and sealed this **16th** day of **December**, **2002**

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

PETER W. CARMAN, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this **16th** day of **December**, **2002**, before me, the undersigned officer, personally appeared Peter W. Carman and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 1st day of July, 2006.

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2002 Printed in U.S.A.

# EXHIBIT B



# Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum

## AIA Document A101 - Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES: CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction , is adopted in this document by reference. Do not use with other general conditions unless this document is modified. This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1962, 1967, 1974, 1977, copyright 1987 the American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C., 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

**AGREEMENT**

made as of the 30th day of September in the year of ~~Nineteen Hundred and~~ Two Thousand and Two

**BETWEEN** the Owner:
*(Name and address)*
Town of Concord, Massachusetts, through its Town Manager
Town House
22 Monument Square
Concord, MA 01742

and the Contractor:
*(Name and address)*
Hodess Building Co. Inc.
100 John L. Dietsch Square
North Attleboro, MA  02763

The Project is:
*(Name and location)*
Construction of a new Alcott Elementary School on Laurel Street in the Town of Concord, Massachusetts.

The Architect is:
*(Name and address)*
Symmes, Maini & Mckee Associates, 1000 Massachusetts Avenue, Cambridge, MA 02138

The Owner and Contractor agree as set forth below.

# RECEIVED

OCT 2 2 2002

HODESS BUILDING CO., INC.

## ARTICLE 1
### THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 9.

## ARTICLE 2
### THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:
N/A

## ARTICLE 3
### DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1**     The date of commencement is the date from which the Contract Time of Paragraph 3.2 is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement, or, if applicable, state that the date will be fixed in a notice to proceed.)*

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**3.2**     The Contractor shall achieve Substantial Completion of the entire Work not later than
*(Insert the calendar date or number of calendar days after the date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Work, if not stated elsewhere in the Contract Documents.)*
the date set forth in Article 8 of the General Conditions (540 calendar days from the date of the Notice to Proceed).

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*
The Contractor shall be subject to the assessment of liquidated damages, in the amount set forth in Paragraph 9.11 of the General Conditions of the Contract, for each day of delay in achieving any Substantial Completion.

## ARTICLE 4
### CONTRACT SUM

**4.1**     The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum of Ten Million Five Hundred and Fifty Thousand Dollars (\$ 10,550,000.00 ), subject to additions and deductions as provided in the Contract Documents.

**4.2**     The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner: N/A
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date until which that amount is valid.)*

**4.3**     Unit prices, if any, are as follows:
As set forth in the Form of General Bid, which is attached to and made a part of this Agreement.

## ARTICLE 5

## PROGRESS PAYMENTS

5.1      Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

5.2      The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

5.3      Subject to the provisions of M.G.L. c.30, Section 39 K and provided Provided an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment to the Contractor not later than the fifteenth day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than 15 days after the Architect receives the Application for Payment.

5.4      Each Application for Payment shall be based upon the Schedule of Values submitted by the Contractor in accordance with the Contract Documents. The Schedule of Values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

5.5      Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

5.6      Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows and in accordance with M.G.L. Chapter 30, Section 39K:

5.6.1.   Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the total Contract Sum allocated to that portion of the Work in the Schedule of Values, less retainage of five percent ( 5.0 %) . Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute may be included as provided in Subparagraph 7.3.7 of the General Conditions even though the Contract Sum has not yet been adjusted by Change Order;

5.6.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of five percent ( 5.0 %);

5.6.3    Subtract the aggregate of previous payments made by the Owner; and

5.6.4    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of the General Conditions.

5.7      The progress payment amount determined in accordance with Paragraph 5.6 shall be further modified under the following circumstances:

5.7.1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to ninety-five percent ( 95 %) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work and unsettled claims; and

5.7.2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of the General Conditions.

5.8      Reduction or limitation of retainage, if any, shall be as follows pursuant to M.G.L. Chapter 30, Section 39K:

*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Subparagraphs 5.6.1 and 5.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

## ARTICLE 6
## FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Certificate for Payment has been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:
Pursuant to M.G.L. Chapter 30, Section 39K.

## ARTICLE 7
## MISCELLANEOUS PROVISIONS

**7.1**     Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**7.2**     Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
In accordance with M.G.L. Chapter 30, Section 39K.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**7.3**     Other provisions:
N/A

## ARTICLE 8
## TERMINATION OR SUSPENSION

**8.1**     The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

**8.2**     The Work may be suspended by the Owner as provided in Article 14 of the General Conditions.

## ARTICLE 9
## ENUMERATION OF CONTRACT DOCUMENTS

**9.1**     The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**9.1.1**     The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.

**9.1.2**     The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition, as amended.

**9.1.3**     The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated July 31, 2002., and are as follows:

**9.1.4**     The Specifications are those contained in the Project Manual dated as in Subparagraph 9.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Document | Title | Pages |
|---|---|---|
| As listed in the Table of Contents of the Project Manual | | |

**9.1.5**     The Drawings are as follows, and are dated July 31, 2002 unless a different date is shown below:

| CIVIL ACTION COVER SHEET | DOCKET NO. C05-327 | Trial Court of Massachusetts Superior Court Department County: __Bristol__ |
| --- | --- | --- |

| PLAINTIFF(S) | DEFENDANT(S) |
| --- | --- |
| HODESS BUILDING CO., INC. | UNITED STATES FIDELITY AND GUARANTY COMPANY |

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** (401) 453-9900
Joseph J. Reale, Jr., Esq.
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400, Prov., RI 02903
Board of Bar Overseers number: 545762

ATTORNEY (if known)

### Origin code and track designation

Place an x in one box only:

- [XX] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

BRISTOL, SS SUPERIOR COURT

FILED

____NTOS, ESQ.
CLERK/MAGISTRATE

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
| --- | --- | --- | --- |
| A01 | Services, labor & materials | F ) | ( ) Yes ( XX ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ........................................... $ ............
  2. Total Doctor expenses ............................................ $ ............
  3. Total chiropractic expenses ...................................... $ ............
  4. Total physical therapy expenses ................................. $ ............
  5. Total other expenses (describe) ................................. $ ............

  Subtotal $ ............

B. Documented lost wages and compensation to date ................. $ ............
C. Documented property damages to date ............................ $ ............
D. Reasonably anticipated future medical and hospital expenses ..... $ ............
E. Reasonably anticipated lost wages .............................. $ ............
F. Other documented items of damages (describe) ................... $ ............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe) $ ............

By Photostatic Process

$ ............

TOTAL $ ............

Clerk of Courts

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
The plaintiff seeks the balance of monies due through an insurance contract with the defendant, which include damages for labor and material, general conditions and costs associated with the completion of the subcontractor's work and interruption to other trades on a school construction project.

TOTAL $830,000.00...

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____  DATE: 3/30/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Date | Pages |
|---|---|---|
| As enumerated on Drawing Sheet G1.01 as prepared by Symmes Maini & McKee Associates, Inc. | | |

**9.1.6**   The addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| Addendum No. 1 | August 16, 2002 | 66 pages |
| Addendum No. 2 | August 23, 2002 | 1 page |
| Addendum No. 3 | August 30, 2002 | 4 pages |
| Addendum No. 4 | September 16, 2002 | 43 pages |

Portions of addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

**9.1.7**   Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents which are intended to form part of the Contract Documents. The General Conditions provide that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
Advertisement; Instructions to Bidders; Contractor's Certificate(s) of Insurance; Performance Bond and Payment Bond; Bid Form.

## CERTIFICATE OF APPROPRIATION:

I hereby certify that an appropriation in the amount of this Contract is available therefor and that the Town Manager has been authorized to execute said contract and approve all requisitions and Change Orders

TOWN ACCOUNTANT

*(Signature)*

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

CONTRACTOR

*(Signature)*

Brian K. Hodess, President
*(Printed name and title)*

OWNER

*(Signature)*

Christopher Whelan, Town Manager
*(Printed name and title)*

A True Copy By Photostatic Process
Attest:

Asst. Clerk of Courts

Form #42

# COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.

SUPERIOR COURT DEPT. OF THE TRIAL COURT

CIVIL ACTION

[SEAL]

No. BRCV2005-00327-C

_____Hodess Building Co., Inc._____ , Plaintiff (s)

v.

_____United States Fidelity and Guaranty_____ , Defendant(s)
Company

BRISTOL, SS. SUPERIOR COURT

FILED

APR - 8 2005

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

(TO PLAINTIFF'S ATTORNEY :
PLEASE INDICATE TYPE OF ACTION INVOLVED :
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER.)

## SUMMONS

TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon ...Joseph. J. Reale, Jr.,
Joseph J. Reale, Jr., Ltd.

plaintiff's attorney, whose address is _30 Kennedy Plaza, Suite 400, Prov., RI 02903_ ,

an answer to the complaint which is herewith served upon you, within (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at _Taunton_ ............... either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Hon. Suzanne V. Del Vecchio, Adm. Justice of the Superior Court Dept. of the Trial Court, at Taunton, the........**1st**...............day of.........**April**..............., in the year of our Lord two thousand and ....**2005**...............

*Magistrate*

NOTICE TO DEFENDANT — You need not appear personally in Court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

A True Copy By Photostatic Process
Attest:
Asst. Clerk of Courts

**NOTES.**

1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. a separate summons is used for each defendant, each should be addressed to the particular defendant.
3.  If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

2SC 24



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HODESS BUILDING CO., INC.,                    )
                                              )
      Plaintiff                               )
                                              )
              v.                              )
                                              )    C.A. No.
UNITED STATES FIDELITY AND                    )
GUARANTY COMPANY,                             )
                                              )
          Defendant                           )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(a), and Local Rule 81.1, the defendant, United States

Fidelity & Guaranty Company ("USF&G"), hereby files and submits its Notice of Removal. In

support of this Notice, USF&G states as follows:

The plaintiff, Hodess Building Co., Inc. ("Hodess"), commenced this lawsuit against

USF&G in the Massachusetts Superior Court (Bristol County) on March 30, 2005. (A true and

accurate copy of the Complaint as served upon USF&G is attached as Exhibit A.) USF&G

received notice of the commencement of the action on or about April 8, 2005.

USF&G is a Maryland Corporation and Hodess is a Massachusetts Corporation.

According to a Claim letter prepared by Hodess on December 15, 2004 and received by USF&G

on January 17, 2005, plaintiff Hodess seeks to recover Eight Hundred Eighty One Thousand Two

Hundred Twenty Nine Dollars ($881,229.00) in damages and therefore, the amount in

controversy exceeds $75,000, exclusive of interest and costs. In these circumstances, this Court

has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), and USF&G is entitled to

remove the action to this Court pursuant to 28 U.S.C. §1446(a).

Accordingly, USF&G hereby files and submits his Notice of Removal.

Respectfully submitted,

UNITED STATES FIDELITY &
GUARANTY COMPANY

By his attorneys,

Bradford R. Carver BBO #565396
Cetrulo & Capone
Two Seaport Lane
Boston, MA 02210
(617) 217-5500

## CERTIFICATE OF SERVICE

I hereby certify that on this _2𝑛ᵗ_ day of _April_ , 2005, I served the foregoing
Notice of Removal by causing a copy of same to be mailed to Joseph J. Rosale, Esq., Joseph J.
Rosale, Ltd., 30 Kennedy Plaza, Suite 400, Providence, MA 02903.

Bradford R. Carver

COMMONWEALTH OF MASSACHUSETTS
BRISTOL COUNTY, ss                          FALL RIVER SUPERIOR COURT
                                            CIVIL DOCKET NO. ___ ___

HODESS BUILDING CO., INC.          :
                                   :
            vs.                    :
                                   :
UNITED STATES FIDELITY AND         :
GUARANTY COMPANY                   :

<u>COMPLAINT</u>

1.    Hodess Building Co., Inc. (Hodess) is a general contractor, with its principal place of business at 100 John L. Dietsch Square, North Attleboro, Massachusetts.

2.    United States Fidelity and Guaranty Company (Fidelity) is a bonding and surety company licensed to do business in the Commonwealth of Massachusetts.

3.    On or about September 30, 2002, Hodess entered into a contract with the Town of Concord, Massachusetts (Concord) for construction of a new elementary school known as Alcott Elementary School, Hodess Project No. 396 (the Project).

4.    Pursuant to terms and conditions of the prime contract, Hodess entered into numerous sub-contract agreements for variation trades for the completion of the work.

5.    In particular, Hodess entered into a contract with The Hartford Roofing Company (Hartford) for the construction and installation of the roof.

6.    Pursuant to the terms and conditions of the agreement between Hodess and Hartford, Hartford was required to provide a performance bond and a labor and material payment bond.

7.    A copy of the labor and material payment bond is attached as **Exhibit A** hereto.

8.   Under the terms and conditions of the bond, Hartford is the principal and Fidelity is the surety.

9.   The bond obligates the surety to complete the performance of work for Hartford if there is any default or failure to perform under the terms of the project.

10.   From the commencement of the work by Hartford, it did not perform in a satisfactory or workmanlike manner.

11.   Hartford consistently failure to deliver materials in a timely manner, staff the job with adequate workers to insure compliance with the schedule and failed to complete critical items of work associated with its obligation under the subcontract with Hodess.

12.   At all times, Hartford's work was critical to the completion of the job. Both the prime contract and the subcontract clearly indicated that time was of the essence for the completion of the work.

13.   During the course of the Project, Hartford ceased doing business and was terminated from the project.

14.   As a result, Fidelity was notified pursuant to its obligation under the performance bond to complete the work under Hartford's subcontract.

15.   Fidelity and Hodess entered into an agreement, attached hereto as Exhibit B, whereby Fidelity agreed to perform the work of Hartford under the terms and conditions of the contract.

16.   The agreement also provided that the parties reserve any and all claims they had against each other as a result of Hartford's failure to complete the work.

17.   Ultimately, Fidelity, through a replacement subcontractor, which was hired by it, completed the Hartford work under the subcontract.

18.  The breach of contract by Hartford, however, caused significant and substantial consequential damages, which impacted Hodess' ability to complete the job in a timely manner. As a result, liquidated damages were assessed by Concord against Hodess for late delivery of the school.

19.  Additionally, Hodess sustained significant damages as a result of claims by subcontractors whose work was impacted by the roof not being completed in a timely manner.

20.  Additionally, Hodess expended significant additional general conditions to supervise and complete the work and managed the transition from Hartford to the replacement subcontractor hired by Fidelity.

21.  As a result of the action by Hartford, Hodess sustained significant damages and loss on the Project.

22.  Hodess made a prompt demand for payment of any consequential and direct damages as a result of Hartford's failure to perform against the performance bond issued by Fidelity on the Project.

23.  Fidelity has failed to respond or investigate the claim pursuant to its contractual and statutory obligation.

## COUNT I

### Breach of Contract

24.  Hodess hereby realleges the allegations set forth in Paragraphs 1 through 23, as if set forth in full herein.

25.  Hodess entered into a take over agreement with Fidelity for the completion of work by Hartford on the Project.

26. Pursuant to the terms and conditions of the agreement, Fidelity was responsible to complete all of Hartford's work and the cost associated therewith.

27. Fidelity has breached its agreement by failing to compensate Hodess for the cost incurred and the completion of Hartford's work.

**WHEREFORE**, Hodess Building Co., Inc. demands judgment against United States Fidelity and Guaranty Company, plus interest, costs and attorney's fees.

## COUNT II

### Performance Bond

28. Hodess hereby realleges the allegations set forth in Paragraphs 1 through 23, as if set forth in full herein.

29. Hartford entered into a subcontract with Hodess on the Project.

30. Pursuant to its obligation, Hartford provided a performance bond with itself as principal and Fidelity as surety.

31. Fidelity has breached the terms and conditions of its obligation under the performance bond by failure to perform all of the work and cost associated with the completion of Hartford's work on the Project.

**WHEREFORE**, Hodess Building Co., Inc. demands judgment against United States Fidelity and Guaranty Company, plus interest, costs and attorney's fees.

## COUNT III

32. Hodess hereby realleges the allegations set forth in Paragraphs 1 through 23, as if set forth in full herein.

33. Hodess was a third-party beneficiary of a contract of insurance issued by Fidelity and Hartford in the form of a performance bond.

34. Pursuant to the obligations thereunder, Fidelity was obligated to perform the work of Hartford under the original contract and the cost associated therewith.

35. As a result of Hartford's failure to perform, Hodess incurred costs which was an obligation of Fidelity.

36. Hodess promptly presented a complaint for Fidelity for payment for costs associated with the completion of Hartford's work.

37. Fidelity failed to properly investigate and meet its obligation pursuant to statute.

38. Fidelity's action constitutes bad faith a violation of statutory obligation.

WHEREFORE, Hodess Building Co., Inc. demands judgment against United States Fidelity and Guaranty Company, plus interest, costs and attorney's fees.

Hodess Building Co., Inc.
By its attorney,

Joseph J. Reale, Jr./#5762
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903
Tel:   (401) 453-9900
Fax:   (401) 453-9917

Dated: March 30, 2005

# EXHIBIT A

# RECEIVED

FEB 07 2003

EXHIBIT A

HODESS BUILDING CO., INC., Bond No. SW8388

## SUBCONTRACT PERFORMANCE BOND

KNOW ALL BY THESE PRESENTS, That we, __THE HARTFORD ROOFING COMPANY, INC.__

__59 Fulton Drive, Brockton, MA 02072__
(Here insert the name and address, or legal title, of the Subcontractor)
, a corporation

As Principal, hereto called Principal, and __United States Fidelity and Guaranty Company__
, as Surety, herein called Surety, are held and firmly
of the State of __Maryland__ __P.O. Box 2730, North Attleboro MA 02763__
bound unto __HODESS BUILDING COMPANY, 100 John J. Dietsch Square,__
(Here insert the name and address, or legal title, of the General Contractor)

as Obligee, in the amount of __Three Hundred Ninety Five Thousand Nine Hundred and 00/100 - - - - - - - - - - - - - - - - - - - -__ hereto, their heirs, executors,
Dollars ($ __395,900.00__ ), for the payment whereof Principal and Surety bind themselves, their heirs, executors,
administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated __October 8 2002__ entered into a
subcontract with Obligee for __Roofing and Sheet Metal - Alcott Elementary School, Concord MA__

which subcontract is by reference made a part hereof, and is referred to as subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if the Principal shall promptly and faithfully perform said
subcontract, then this obligation shall be null and void; otherwise to remain in full force and effect.

The Surety hereby waives notice of any modification or amendment to the Subcontract made in accordance with the terms thereof, and any
alteration or extension of time made by or through the General Contractor.

Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's
obligations thereunder:

(1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, and

(2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee, may arrange for the performance of Principal's
obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the
subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to
the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond. If the Surety
arranges completion or remedies the default, then portion of the balance of the subcontract price as may be required to complete the
subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner
as said sums would have been payable to Principal had there been no default under the subcontract. The term "balance of the
subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the subcontract and
any amendments thereto, less the amounts heretofore properly paid by Obligee under the subcontract.

Any suit under this bond must be instituted before the expiration of two years from date on which final payment under the subcontract
falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the
heirs, executors, administrators or successors of the Obligee.

Signed and sealed this ____3rd____ day of __February__, 2003.

In the presence of:

THE HARTFORD ROOFING COMPANY, INC.    (Seal)
Principal

By _____
Jeff Goldstein, Vice President/GM

United States Fidelity and Guaranty Company
Surety

By _____
Kathleen M. Flanagan    Attorney-in-Fact

**POWER OF ATTORNEY**

The St Paul

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No. 23648

Certificate No. **1614828**

KNOW ALL MEN BY THESE PRESENTS: That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Maryland, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Indiana, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Kathleen M. Flanagan, Bette A. Sampsel, Richard A. Leverardi, Gary J. Glabicat, Kelly L. Nelson, Kathleen A. Wagner, and Eric
Knelzler

of the City of _____Farmington_____, State _____Connecticut_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and sealed this _____16th_____ day of _____December_____ 2002

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

PETER W. CARMAN, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this _____16th_____ day of _____December_____, 2002, before me, the undersigned officer, personally appeared Peter W. Carman and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc., and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 1st day of July, 2006.

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2002 Printed in U.S.A.

# EXHIBIT B

Exhibit B

# Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum

## AIA Document A101 - Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified. This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, copyright 1987 The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States, and will be subject to legal prosecution.

**AGREEMENT**
made as of the 30th day of September in the year of Nineteen Hundred and Two Thousand and Two

**BETWEEN** the Owner:
*(Name and address)*
Town of Concord, Massachusetts, through its Town Manager
Town House
22 Monument Square
Concord, MA 01742

and the Contractor:
*(Name and address)*
Hodess Building Co. Inc.
100 John L. Dietsch Square
North Attleboro, MA 02763

The Project is:
*(Name and location)*
Construction of a new Akron Elementary School on Laurel Street in the Town of Concord, Massachusetts.

The Architect is:
*(Name and address)*
Symmes, Maini & Mahon Associates, 1000 Massachusetts Avenue, Cambridge, MA 02138

The Owner and Contractor agree as set forth below.

# RECEIVED

OCT 22 2002

HODESS BUILDING CO., INC.

# ARTICLE 1
## THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 9.

# ARTICLE 2
## THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:
N/A

# ARTICLE 3
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1    The date of commencement is the date from which the Contract Time of Paragraph 3.2 is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement, or, if applicable, state that the date will be fixed in a notice to proceed.)*

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

3.2    The Contractor shall achieve Substantial Completion of the entire Work not later than
*(Insert the calendar date or number of calendar days after the date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Work, if not stated elsewhere in the Contract Documents.)*
the date set forth in Article 8 of the General Conditions (540 calendar days from the date of the Notice to Proceed).

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*
The Contractor shall be subject to the assessment of liquidated damages in the amount set forth in Paragraph 9.11 of the General Conditions of the Contract, for each day of delay in achieving any Substantial Completion.

# ARTICLE 4
## CONTRACT SUM

4.1    The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum of Ten Million, Five Hundred and Fifty Thousand Dollars ($ 10,550,000.00 ), subject to additions and deductions as provided in the Contract Documents.

4.2    The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner: N/A
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date until which that amount is valid.)*

4.3    Unit prices, if any, are as follows:
As set forth in the Form of General Bid, which is attached to and made a part of this Agreement.

# ARTICLE 5

## PROGRESS PAYMENTS

**9.1**  Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**9.2**  The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**9.3**  Subject to the provisions of M.G.L. c.30, Section 39 K and provided Provided an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment to the Contractor not later than the *fifteenth* day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than **15** days after the Architect receives the Application for Payment.

**9.4**  Each Application for Payment shall be based upon the Schedule of Values submitted by the Contractor in accordance with the Contract Documents. The Schedule of Values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**9.5**  Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**9.6**  Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows and in accordance with M.G.L. Chapter 30, Section 39K:

**9.6.1**  Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the total Contract Sum allocated to that portion of the Work in the Schedule of Values, less retainage of *five* percent ( **5.0 %**) . Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute may be included as provided in Subparagraph 7.3.7 of the General Conditions even though the Contract Sum has not yet been adjusted by Change Order;

**9.6.2**  Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of *five* percent ( **5.0 %**);

**9.6.3**  Subtract the aggregate of previous payments made by the Owner; and

**9.6.4**  Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of the General Conditions.

**9.7**  The progress payment amount determined in accordance with Paragraph 9.6 shall be further modified under the following circumstances:

**9.7.1**  Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to *ninety-five* percent ( **95 %**) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work and unsettled claims; and

**9.7.2**  Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of the General Conditions.

**9.8**  Reduction or limitation of retainage, if any, shall be as follows: *payment in M.G.L. Chapter 30, Section 39K*.

*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Subparagraphs 9.6.1 and 9.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

## ARTICLE 6
## FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Certificate for Payment has been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

Pursuant to M.G.L. Chapter 30, Section 39K.

## ARTICLE 7
## MISCELLANEOUS PROVISIONS

7.1    Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

7.2    Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon, if any.)*

In accordance with M.G.L. Chapter 30, Section 39K.

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

7.3    Other provisions:

N/A

## ARTICLE 8
## TERMINATION OR SUSPENSION

8.1    The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

8.2    The Work may be suspended by the Owner as provided in Article 14 of the General Conditions.

## ARTICLE 9
## ENUMERATION OF CONTRACT DOCUMENTS

9.1    The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

9.1.1    The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.

9.1.2    The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition as amended.

9.1.3    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated July 31, 2002, and are as follows:

9.1.4    The Specifications are those contained in the Project Manual dated as in Subparagraph 9.1.3, and are as follows:

*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Document | Title | Pages |
|---|---|---|

As listed in the Table of Contents of the Project Manual

9.1.5    The Drawings are as follows, and are dated July 31, 2002 unless a different date is shown below:

*(Either list the Drawings here or refer on an exhibit attached to this Agreement.)*

| Number | Date | Pages |
|---|---|---|
| As represented on Drawing Sheet G1.01 as represented by Symmes Maini & McKee Associates, Inc. | | |

**9.1.6   The addenda, if any, are as follows:**

| Number | Date | Pages |
|---|---|---|
| Addendum No. 1 | August 15, 2002 | 66 pages |
| Addendum No. 2 | August 21, 2002 | 1 page |
| Addendum No. 3 | August 29, 2002 | 9 pages |
| Addendum No. 4 | September 16, 2002 | 42 pages |

Portions of addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

**9.1.7   Other documents, if any, forming part of the Contract Documents are as follows:** *The Contract Conditions provide that bidding requirements such as the advertisement or invitation to bid, instructions to bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
Advertisement; Instructions to Bidders; Contractor's Certification of Insurance; Performance Bond and Payment Bond; Bid Form.

**CERTIFICATE OF APPROPRIATIONS:**
I hereby certify that an appropriation in the amount of this Contract is available therefor and that the Town Manager has been authorized to execute said contract and approve all requisitions and Change Orders.

**TOWN ACCOUNTANT**

*Cheryl A. Smith*
(Signature)

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

**CONTRACTOR**

*Brian K. Hodess*
(Signature)
Brian K. Hodess, President
(Printed name and title)

**OWNER**

*Christopher Whelan*
(Signature)
Christopher Whelan, Town Manager
(Printed name and title)



COMMONWEALTH OF MASSACHUSETTS
DIVISION OF INSURANCE
ONE SOUTH STATION
BOSTON, MASS 02110

COMMONWEALTH OF MASSACHUSETTS
DIVISION OF INSURANCE
ONE SOUTH STATION
BOSTON, MASS 02110

UNITED STATES FIDELITY and GUARANTY
COMPANY
c/o Corporation Service Company
84 State Street
Boston, MA 02109

# CETRULO & CAPONE LLP
### COUNSELLORS AT LAW
### TWO SEAPORT LANE
### BOSTON, MASSACHUSETTS 02210
#### TELEPHONE (617) 217-5500
#### FACSIMILE (617) 217-5200
*www.cetcap.com*
(617) 217-5205
rsullivan@cetcap.com

NEW YORK, NEW YORK
TELEPHONE (212) 635-2230

PROVIDENCE, RHODE ISLAND
TELEPHONE (401) 274-7850

April 29, 2005

## VIA FIRST CLASS MAIL

Clerk of the Courts
Bristol County Superior Court
9 Court St.
Room 13
Taunton, MA 02780

      **Re:** **BRCV2005-00327-C: Hodess Building Co., v. United States Fidelity & Guaranty Company**

Dear Sir/Madam:

    I have filed a Notice of Removal of this case from the Massachusetts Superior Court (Bristol County) to United States District Court for the District of Massachusetts (Eastern Division). I enclose a certified copy of the Notice of Removal filed in the Federal Court.

    Please send me certified or attested copies of all records and proceedings filed in the Superior Court and a certified or attested copy of all docket entries in this case as soon as possible. If there is any charge for copying costs, please send me an invoice and I will ensure that the copying charges are paid promptly. If you have any questions regarding theses requests, please do not hesitate to call me at (617) 217-5205.

    Thank you for your cooperation.

                        Sincerely,

                        Ryan D. Sullivan

RDS
Encl.

cc:    Joseph J. Reale, Esq.
       30 Kennedy Place, Suite 400
       Providence, RI 02903

A True Copy By Photostatic Process
Attest:

Asst. Clerk of Courts

02060-0000
370290v1